**LAZZARO, Jr., In Re.**

Common Pleas Court, Cuyahoga County.

No. 62767. Decided March 27, 1953.

Frank T. Cullitan, Pros. Atty., John J. Mahon, Asst. Pros. Atty., Cleveland, Wolf & Kruchkoff, amicus curiae and for the witness.

## OPINION

By MERRICK, J:

I am in receipt of your request of February 19, 1953, submitting certain questions which were propounded to the aforementioned witness in proceedings before the Grand Jury. To each of the questions the witness has refused an answer, and has asserted that such refusal is based upon his opinion that an answer might tend to incriminate him.

Two of the questions, seeking to elicit whether or not the witness made a loan or loans from banks without expressing the purpose for which the loans were made are proper and should be answered by the witness. Any answer to these questions would not tend to incriminate the witness.

The remaining twelve questions fall into a different category. From their very nature, it is indicated that the elicitation of some connection with an alleged gambling house is being sought. Answers to these questions might establish that the witness visited a gambling room or indulged in gambling, either of which is a violation of law punishable upon prosecution and resultant conviction.

**Sec. 10 of Article I of the Ohio Constitution provides:—**

"No person shall be compelled, in any criminal case to be a witness against himself. . ."

It is a well established principle that no person may be compelled to testify where that testimony may incriminate him or lay the foundation for a criminal prosecution against him. There is no law which will punish a witness for refusal to give such evidence. To this principle courts will admit no exceptions but those which have been made by statute. **42 O. Jur., Page 44. State of Ohio v. Murray, 82 Oh St, 305.**

A witness is excused from answering not only where the effect would be to involve him in guilt, but also where his answers would furnish one essential link in a chain of testimony conducing to the same end. It is a generally recognized rule that the witness cannot be compelled to disclose any fact which forms a necessary and essential link in a chain of testimony that would be sufficient to convict him of any crime. 28 Ruling Case Law, 433.

Moreover, if, from the evidence and the nature of the question, the Court can definitely determine that the answer will form a link in the chain of evidence to establish the commission of a crime by the witness, it cannot inquire whether the witness claimed his privilege in good faith or otherwise. Ex parte Irvine, 74 F. 954.

The rights intended to be protected by the constitutional provision that no man accused of crime shall be compelled to be a witness against himself are so sacred, and the pressure toward their relaxation so great when the suspicion of guilt is strong and the evidence obscure, that it is the duty of courts liberally to construe the prohibition in favor of personal rights and to refuse to permit any steps tending toward their invasion. **O. Jur., Vol. 42, Page 54.**

This protection extends to witnesses called before the grand jury, who claim the privilege and do not voluntarily testify. 28 Ruling Case Law, page 426; **Burke v. State of Ohio, 104 Oh St, 220.**

As constitutional provisions privileging witnesses from giving self-incriminating evidence are intended solely for the protection of the witness, and have no proper application when the witness is not in danger of actual conviction, it is generally conceded that, where statutory immunity has been conferred upon the witness, and such immunity is full and complete by preventing prosecutions against the witness on account of any transaction, matter or thing testified to such witness may be compelled to testify and held guilty of contempt in refusing to do so, without violating the constitutional privilege against self-incrimination. **Mouser v. Public Utilities Commission of Ohio, 124 Oh St, 425.**

Ohio has granted immunity generally and extensively to any person called on behalf of the State to testify in a matter concerning the violation of any one of the many statutes which declares it a misdemeanor to indulge in any form of gambling. This is contained in §13444-4 GC. So much of that statute as is applicable in the instant matter reads as follows:—

"If a person called to testify on behalf of the State before a magistrate, the grand jury or court, upon complaint, information, affidavit or indictment, discloses a fact tending to incriminate himself as to a misdemeanor hereinafter named, he shall be discharged from liability for prosecution or punishment for such offense, viz:—. . . permitting a game for wager to be played . . . in a house, building or erection, . . . or playing a game therein . . . for wager, or betting or wagering on the hands or sides of persons so playing . . ."

It is readily apparent that if this statute is applicable in the instant situation the witness should be compelled to answer the questions. It is to be conceded that the chain of inquiry indicated by the questions propounded to the witness point directly to subsequent questions that would attempt to elicit whether he gambled at the Euclid Bridge and Whist Club or had some part in operating any public gambling game being played at that place.

The circumstances in this case are identical with those present when the Supreme Court of Ohio decided the cases of **Hebebrand, Miller and Patton v. State of Ohio, 129 Oh St, 574.**

This case arose in Cuyahoga County and grew out of an inquiry by the grand jury, similar in pattern to the case at hand.

In December, 1934, the grand jury, not acting under any written charge made against an accused, but acting upon its own initiative, proceeded to inquire into certain gambling activities conducted in the county by certain "clubs." The defendants were called as witnesses before the grand jury for examination. A series of questions was propounded to each witness similar in character, which, taken as a whole, had the tendency to acquire the witness' knowledge of the club's activities and his connection therewith. Some of these questions were answered by the defendants, but they refused to answer others, each witness stating as a ground for his refusal that his answers would tend to incriminate him. Acting under the provisions of §13436-11 GC, defendants were haled before the judge, who instructed defendants to answer the questions, including those that tended to incriminate the witness. Still persisting in their refusal to answer in compliance with the order of court, the defendants were each found guilty

of contempt. They appealed and eventually the case reached the Supreme Court of Ohio.

Excerpts of the opinion of Judge Jones in that decision disposes of the question which is raised in the instant case and gives the reasons therefor. The liberty is being taken to quote extensively from that opinion as follows:—

"No one doubts the power of a grand jury to investigate, on its own initiative, crimes and offenses committed within the county, and its prerogative so to do is not impinged upon by this or any other statute. But here we have a statute embracing plain and unambiguous terms. It gives immunity to a witness only when he is called to testify on behalf of the state 'upon **complaint, information, affidavit** or **indictment.**' There is no question that informations, affidavits and indictments require legal process and must be couched in written form charging an individual with a specific offense and apprising a court or magistrate of its nature. The term 'complaint' is grouped with the other terms, viz:—'information, affidavit or indictment,' which do require formal, legal process and, being included in that group, should be given the same legal meaning.

"Had an accused person been bound over by a magistrate, under the provisions of §13433-10 GC, it might be plausibly argued that the grand jury was acting upon complaint initiated by affidavit. However, that feature is not presented in this record. The grand jury is an inquistorial body. In this instance, there could be no 'complaint' until after the investigation was concluded by the grand jury. In law, the word 'complaint' connotes a formal written charge of some specific offense and alleges that a crime was committed by a specified offender. In defining the word 'complaint' when used in legal proceedings, Webster's New International Dictionary defines it as follows: 'Law. A formal allegation or charge against a party, made or presented to the appropriate court or officer, as for a wrong done or a crime committed.' In 'Words and Phrases' is found the following definition of the same term:—'A "complaint" is a form of legal process, which consists of a formal allegation or charge against a party, made or presented to the proper court or officer, as for a wrong done or a crime committed.' "

\* \* \*

"In our own state, prosecutions for misdemeanors by information, in lieu of indictment, in our Common Pleas Courts, are provided for by §13437-34 GC. This section distinctly stipulates that informations must have the same legal forms and sufficiency required of indictments. Prosecutions for gambling

can only be instituted by affidavit, information or indictment which require written process. Ohio has provided no authority for such prosecutions by initiating unwritten, informal 'complaints'—a practice which is unknown to our Code of Criminal Procedure. The terms 'complaint' and 'affidavit' are often used interchangeably. as in §13429-6 GC; and if, in this instance, we should give the word **complaint** any validity, we must necessarily construe it as meaning a written complaint initiated by way of affidavit, information or indictment; otherwise we must discard it altogether.

"In construing penal statutes, we must adhere to the well settled rule that they require a strict rather than a liberal construction . . . The Legislature has recognized this rule in criminal proceedings as shown by its adoption of the latter clause of §10214 GC, stipulating that the 'section shall not be so construed as to require a liberal construction of provisions affecting personal liberty, relating to amercement, or of a penal nature.' Adhering to this rule, and giving to the term 'complaint' its legal signification, . . . since there was no information, affidavit or indictment, nor any written complaint before the grand jury for investigation, the claimed immunity statute, §13444-4 GC does not, and was not intended to apply to proceedings like the instant one. . ."

This reasoning of the Supreme Court of Ohio, handed down in the year 1935 in a case identical in fact to the one at hand is summed up in the third syllabus of that case as follows:—

"Where no written complaint or affidavit, information or indictment has been lodged against anyone, the provisions of such section do not apply, as the witness is not called to testify **'upon complaint, information, affidavit or indictment,'** and in such a case a witness may refuse to answer questions that have a tendency to incriminate himself."

This Court must follow this ruling of the highest court in the state and advise you that the witness Lazzaro was within his rights in refusing to answer the 12 questions under consideration. In so doing, I am cognizant of the fact that the law thus hampers a grand jury investigation into organized or commercialized gambling without some specific charge being preferred against some person on such gambling charge before some court or magistrate. Otherwise the witnesses may refuse to answer the questions pertinent to establish the existence of this vice. Experience teaches that such witnesses are usually reluctant ones, not of the type enthusiastic for law observance or enforcement. There is no doubt but that the Legislature originally intended to strengthen the hand of the law by the enactment of this immunity statute and that such strength

was designed to extend to grand jury inquiries. Some amendment to the statute might be advisable. This Court cannot make or amend the law, but must enforcce it as it is written and in the form and manner as directed by our reviewing courts.